# COURT OF APPEALS.

WRAY, respondent, agt. RHINELANDER, exr., &c., appellant.
COCKS, respondent, agt. same appellant.

Where a lease is given for twenty-one years, under and in conformity to a covenant contained in a previous lease of the same premises for a similar term, the second lease being given to the owner of the first lease, and containing covenants that the lessee, on the last day of the term, or other sooner determination of the estate thereby granted, should deliver up the premises " within good and sufficient fence," and also the further covenant that the lessors should, at the expiration of such renewal lease, either grant a new lease of the premises thereby demised, for the further term of twenty-one years then next ensuing at such rent as should be determined, &c., &c., or " pay unto the lessee, his executors, administrators, or assigns, the value in good and lawful money of all such stone and brick buildings as may have been erected by the lessee, his personal representatives, or assigns, on the demised premises and be then standing thereon;" and it was also therein provided how the rent and the value of the buildings were to be ascertained, and it was declared that the new lease, if one was given, should contain like covenants and conditions as were contained in that of the said renewed lease, except only so far as regards a further renewal of the said lease, or the payment of the value of any buildings erected and standing on the premises, and instead thereof should contain a provision that "all such stone and brick buildings shall be deemed the property of the lessee, &c., who should be at liberty within ten days after the expiration of the term, but not afterwards," to take down, remove, and carry away, and move off of said premises, all such stone and brick buildings and the material thereof, leaving the said premises inclosed within good and sufficient fence, as aforesaid.

In such a lease, where it appeared that during the first term the land had already been improved with buildings of the description for which compensation was provided, it cannot reasonably be inferred that the parties contemplated their destruction and the erection of new buildings during the extended term.

The words "all such stone and brick buildings as may have been erected by the said party of the second part, &c., &c., on the demised premises, and be then standing thereon," does not limit the provisions to buildings to be subsequently erected. The words " may have been erected" would apply as well to those buildings which were built before the second lease, as to those which were built after the second lease was given.

The lessee in the second lease, even though he may not be the same party to whom the first lease was given, yet if he were the assignee of the first lease, and took the second lease before the expiration of the first lease, he comes within the provisions of the covenant in question as the " party of the second part."

So far as the owner of the premises is concerned, it is a matter of no importance to

him whether the buildings in question were erected by the first lesee or by his assignee. The rational interpretation of the above covenant includes all such improvements (stone and brick buildings) as are actually upon the premises at the expiration of the second term. (MASON, J. dissenting.)

*Per* MASON, *J. dissenting.*—An enlargement of the buildings made during the second term, would be an erection coming within the terms of the covenant in question, and would entitle the owner of the second lease to payment therefor. .

*Heard together at April term,* 1869, *and decided together at July term,* 1869.

In the case of Wray, the special term of the supreme court (CLERKE, J.) rendered judgment for the defendant, but the general term on appeal reversed it, and granted a new trial. From such order granting a new trial, the defendant appealed to this court and gave the stipulation under subdivision 2 of § 11 of the Code.

In the case of Cocks, which was in the superior court, a verdict was rendered for the plaintiffs by the direction of the late chief justice ROBERTSON—the exceptions to be heard, in the first instance, at the general term—judgment in the mean time suspended. The general term of the superior court ordered judgment on the verdict, and from such judgment appeal was taken to this court.

In the case of Wray, the facts were these:

William Rhinelander, by indenture of lease, dated May 1, 1824, leased to Ward B. Howard certain premises in the city of New York, for the term of twenty-one years from the date of the lease, at the rent of $400 per annum, the lessee covenanting to pay all taxes, and at the end of said term of twenty-one years, quietly and peaceably to leave, surrender and yield up the said premises to the party of the first part, his heirs or assigns. The lease contained an agreement as follows : "And it is hereby further mutually agreed by and between the parties to these presents, for themselves, their heirs and assigns, that at the expiration of the above term of twenty-one years, the said party of the first part, his heirs or assigns, shall and will, at his or their election, *either* grant a new lease of the hereby demised

premises for the further term of twenty-one years, upon such increase of rent as shall be agreed on, &c., *or* he or they will pay unto the said party of the second part, his executors, administrators, or assigns, the value in good and lawful money of the United States of America, of all such stone or brick buildings as shall have been erected on the said hereby demised premises by the said party of the second part, his executors, administrators, or assigns." A provision was then made for determining such value by arbitrators; and it was then provided, that "within ten days after notice of such appraisement, the party of the first part, his heirs, or assigns, shall make his or their election, *either* to grant a new lease, *or* to pay the value of the said buildings." Certain brick buildings were erected on the premises by the first lessee, and subsequently the plaintiff became assignee of the lease. William Rhinelander died, and the defendant succeeded to the estate as executor and trustee under his will. In 1844, a year before the termination of the lease, the plaintiff, intending to go to Europe for a protracted absence, desired the defendant to have the appraisement made then, instead of the time named in the lease, and to make his election whether he would give a new lease, or pay for the buildings, so that the plaintiff might have this matter settled before his departure. The defendant replied in substance, that he would make his election then, and would give him a new lease for twenty-one years, at the rent of $900. To this the plaintiff agreed, and the defendant executed a lease to the plaintiff, bearing date March 1, 1844. This lease was also executed by the plaintiff, and was immediately placed upon record. The plaintiff subsequently changed his mind, and did not go to Europe, but remained here in possession of the premises, paying rent therefor, until the end of this lease, May 1, 1866, when the defendant, having elected not to give another lease, took possession of the premises and leased them to other parties.

The lease given by the defendant to the plaintiff, March

1, 1844, was a lease for twenty-one years, and contained a covenant "that at the expiration thereof, the defendant, his successors, or the persons entitled to reversion of the estate, will at their election, *either* give a new lease for twenty-one years," (then follows an enumeration of covenants to be contained in such lease if given,) "*or* will pay to the party of the second part, his executors, administrators or assigns, the value of such stone or brick buildings *as may have been erected by the said party of the second part, his executors, administrators or assigns, on the said demised premises, and be then standing thereon;*" and provision is made for ascertaining values by appraisement.

It turned that no buildings whatever, had been erected on the premises during the term of the second lease; the only buildings thereon, being those which had been erected during the first lease, which terminated in 1845. Subsequently, Mr. Ray brought his action to have the lease, which had been executed in 1844, reformed by striking out from the election covenant the words limiting payment to buildings erected by the plaintiff, his executors, administrators or assigns, and for damages in case of such reformation, so as to entile him to recover the value of the buildings which had been erected under the first lease. He based his claim for reformation upon a statement made by a clerk of defendant's, and upon supposed legal effect of the lease which he claimed, was to entitle him to be paid for buildings which had been erected upon the premises during the first lease.

In the case of Cocks the facts were these: On July 1st, 1825, Loring & Le Foy leased of the defendant's testator, William Rhinelander, *the vacant lots*, in the city of New York, now known as Numbers 162 & 163, West street, for the period of two years and ten months, at the rent of $300 payable quarterly.

The lessees therein covenanted, at the expiration of their term, *to leave the said lots within good and sufficient fence.*

This lease, also contained the following covenant: "And it is hereby further mutually agreed and covenanted by and between the parties to these presents aforesaid, that in case no agreement shall be made between them for a further or new lease of the said premises, on or previously to the time of three months before the expiration of the term hereby demised, nor any agreement for the improvements made thereon, that then it shall and may be lawful for the said *party of the second part, executors, administrators, or assigns, to remove and take off all buildings which may have been erected on said premises by the said party of the second part, executors, administrators, or assigns, &c.*"

This lease was acknowledged and recorded on the same day; also the same parties, leased of the defendant's testator the same premises for the term of eighteen years, commencing at the expiration of the previous lease, at the rent of $400, payable quarterly.

This lease contained the following covenant, viz.: "That at the expiration of the said term hereby granted, the said party of the first part, his heirs or assigns, shall and will, at his or their election, either grant a new lease of the said hereby demised *lot or parcel of land*, for the further term of twenty-one years therein next ensuing, unto the said parties of the second part, their executors, administrators, or assigns, upon *such increase of rent*, as shall be agreed on by two indifferent persons, one of which persons to be appointed by the said party of the first part, his heirs or assigns, and the other by the said parties of the second part, their executors, administrators, or assigns; and in case of disagreement, (the covenant contains a clause of umpirage,) he or they will pay unto the said parties of the second part, their executors, administrators, or assigns, the value, in good and lawful money of the United States, of such stone and brick buildings *as have been, or may hereafter be erected* on the said demised premises by the said parties of the second part, their executors, administrators, or assigns." The covenant

then provides as to the mode of fixing such value, to wit, by two appraisers, and by umpirage in case of disagreement, and that they shall be appointed at a time not less than three months before the expiration of the then demise. That the appraisers and umpire shall make their returns of the rent so fixed, and also of the value of the buildings, unto both parties. And then the covenant provides further: " And such return having been made, the said party of the first part, his heirs or assigns, shall within ten days thereafter, make his or their election, *either to grant a new lease* AS AFORESAID, or to PAY THE VALUE OF THE SAID BUILDINGS AS AFORESAID, and notify the same unto the said parties of the second part, their executors, administrators, or assigns, and the same shall be conclusive *and binding upon the parties to these presents, and upon all others* interested or concerned therein."

After various mesne conveyances the said leases became the property of Hester Le Foy; she dying, Elisha Morrill received letters of administration with the will annexed on her estate. A litigation ensuing with regard to her property, a decree there was made by the assistant vice chancellor of the first circuit, in which among other things, it was ordered that Mr. Morrill, be *empowered as receiver to renew the lease of said two stores*, (i. e., the premises in question,) according to the covenant of renewal, and upon such terms as he may deem just, subject to the approval of said court, such renewal to *be made in his name as receiver*.

Under and in pursuance of this authority, Elisha Morrill, as trustee of the estate of Abraham Le Foy and Hester Le Foy, deceased, took the lease in question from the present defendant, as surviving executor of the last will and testament, and trustee of the estate of William Rhinelander. By this lease, which was for twenty-one years, from May 1st, 1846, the present appellant leased the lot in question to said Morrill, as trustee, describing the lots as *the same parcel of ground as was leased by William Rhinelander to*

Josephus B. Loring and Abraham Le Foy, for the term of eighteen years from the first day of May, one thousand eight hundred and twenty-eight, at the annual rent of $800. The Morrill lease contained substantially and almost literally the same covenants as in the lease of Wray.

This lease was executed by the appellant as executor and trustee, and *by Elisha Morrill as receiver.*

Mr. Rhinelander consented that Mr. Morrill, the receiver, as lessee, might assign the lease over, which he did. By various mesne conveyances, the lease was severed, and the plaintiff, Cocks, became owner of the house No. 163, West street, and thereafter, the landlord, treated the lease as severed, and accepted from the owner of one lease, $400 for rent of 162, West street, and from Cocks, $400 for rent of 163, West street.

In January, 1867, the landlord nominated his appraiser, and the two tenants of the two houses nominated one appraiser.

The two appraisers, on the 30th April, 1867, agreed upon a report, finding the value of each building at $2,750, and the rent for each building, $750.

On the same day the landlord gave the two tenants notice that he elected not to grant a new lease, but to pay "the value of any stone or brick buildings which have been erected on the said premises by the said lessee, or his assigns during the term of the said lease."

On the 30th April, 1867, the last day of the term, Mr. Cocks was served with this notice of election. On the next day, being confined to his own house by illness, he sent his son to the defendant's office, to receive the value of the buildings. An interview took place with one Paton, who claimed to be defendant's agent. "I told Mr. Paton, that I came there to receive the value of the buildings; he said that Mr. Rhinelander could not pay the value of the buildings until after the property had been examined—the title—to see if anything was against the property. I asked him how

long it would take to have the property examined ; he said about ten days or two weeks. I then said, " Mr. Paton, will you pay for the value of the buildings after you have examined the property ?" said he, " certainly, we will." I then called there about three weeks after that, and said, I had again called to receive the value of the buildings. He said Mr. Rhinelander had determined not to pay for the value of the buildings, and referred the witness to the lawyer for the estate."

On May 1st, 1867, the landlord took possession of the builings, and rented them out to other parties, who have been in possession ever since.

The reason the witness applied to Paton, was because the defendant, prior to May 1st, 1867, referred him to said Paton, as his agent ; said that Mr. Paton would tend to the business, which he did ever after that.

On the trial, the plaintiff Cocks, proved he always kept the premises in repair, and made extensive repairs, and furnished an expensive and valuable lamp, which was fixed into the wall of the front, and was taken possession of by the landlord. The landlord made no repairs whatever.

The defendant made a motion to dismiss the complaint, on the ground that the plaintiff Cocks, had shown no cause of action. This was denied, and he excepted.

This motion was subsequently renewed after all the evidence was in, but was denied. Defendant excepted.

The defendant asked the court to charge the jury that the defendant was entitled to a verdict. Denied, and exception.

The defendant, also excepted to the introduction of the interview with Paton, as testified to by the witness, and requested the court to charge that there is no evidence of any authority to Paton, to make a promise to charge the estate, and that the statement made does not amount to a promise. Request denied, defendant excepted.

The court directed the jury to render a verdict for plaintiff

Cocks, for the value of the premises, as admitted, with interest, in all $2,951 52–100.

These two appeals were argued together.

H. H. ANDERSON, *for the Rhinelander estate.*
S. P. NASH, *for Stephen Wray.*
DENNIS McMAHON, *for Cocks, and others.*

The court delivered the main opinions in the Wray case, as follows, viz.:

LOTT, J.—The lease of 1st March, 1844, from the defendant to the plaintiff Wray, must be construed in connection with that of 1st May, 1824, from William Rhinelander, the defendant's testator, to Ward B. Howard, of which it was a renewal. When the original lease was given, there was no buildings on the property, and it was agreed by the parties, that at the expiration of the term of twenty-one years, for which the land was demised, the lessor should at his election, either grant a new lease thereof to the lessee or his aasigns, for the further term of twenty-one years, or pay the value as stated therein, " of all such stone and brick buildings as shall have been erected on the said hereby demised premises" by him, and provision was made for determining the amount which should be paid for rent in one case and for the buildings in the other.

Howard, the lessee entered into possession of the land, and buildings of brick were erected thereon by him during his term, and after their erection the plaintiff became the assignee of the lease and the owner of the buildings.

Before the expiration of the term and in pursuance of the right of election to renew the lease or purchase the buildings as above stated, the defendant executed to the plaintiff the lease of 1st March, 1844, at an annual rent agreed upon by the parties who were described therein. The defendant as party " of the first part," and the plaintiff as " party of the second part."

It, after particularly describing the "lot, piece or parcel of ground" demised, referred to it as being the same parcel of ground now under lease, made by William Rhinelander, &c., above mentioned, and the lessee among other covenants agreed on the last day of the term, or other sooner determination of the estate thereby granted to deliver up the demised premises "within good and sufficient fence," and it was then mutually covenanted and agreed that at the expiration of the said term, the party of the first part, &c., * *" should at their election either grant a new lease of the premises thereby demised, for the further term of twenty-one years then next ensuing, at such rent as should be determined, &c. &c., or pay unto the said party of the second part his executors, administrators, or assigns, the value in good and lawful money, of all such stone and brick buildings as may have been erected by the said party of the second part, his executors, administrators, or assigns, on the said demised premises, and be then standing thereon; and it was provided how the rent and the value of the buildings were to be ascertained; and it was declared that the new lease, if any one was given, should contain the like covenants and conditions as contained in that of March 1st, 1844, "except only so far as regards a further renewal of the said lease" or the payment of the value of any buildings erected and standing on the premises, and instead thereof, it should contain a provision, that all such stone and brick buildings shall be deemed the property of the party of the second part, &c., who should be at liberty within ten days after the expiration of the term, but not afterwards, to take down, remove and carry away from off said demised premises, all such stone and brick buildings and the material thereof, leaving the said premises inclosed within, good and sufficient fence as aforesaid.

It appears by the finding of the justice, who tried the issues at the circuit, that the buildings which were erected by Howard, on the ground demised during the first term,

were standing at the expiration of the second term, and that no stone or brick buildings had been at any time erected thereon by the plaintiff.

It necessarily follows, that when the renewal lease was given the land was already improved with buildings of the description for which compensation was provided, and it cannot reasonably be inferred that the parties, or either of them, contemplated their destruction and the erection of new buildings during the extended term. It is to be observed, and I think it is a material fact, that in referring to the value of buildings to be paid for, there is no specific restriction to such as were to be erected *during the term* of the *new or renewal lease*.

It refers to "all such stone and brick buildings as *may have been erected* by the said party of the second part, &c., * * on the demised premises and be then standing thereon." That language is not such as would have been used to limit the provision to buildings to be subsequently erected. The words "as may be," or "as shall be" erected, would have been the appropriate terms for such limitation. If the buildings on the ground had been put up by the plaintiff himself, after he became assignee of the lease, or if Mr. Howard instead of the plaintiff, had been the lessor in the second lease, then they would have been within the strict and technical language used. The words "may have been erected," would have been applicable as well to those built before as to such as were built after the second lease. The only ground, therefore, for holding that the covenant does not apply to the buildings that were standing at the expiration of the second term is, that they were not put on the land by the plaintiff, "the party of the second part," to the last lease. This is a very narrow and technical construction. In view of the fact that he became the owner of the property as assignee of the first lease, he represents Howard, the first lessee and stands in his place. He became by the assignment to him, the party thereto of the

second part, and thus, for all practical purposes, he may be considered as such party within the meaning of the covenant. It was a matter of no importance to the defendant by whom the buildings were erected, whether by the plaintiff or by Howard. The only fact that was material to him was, that the buildings erected for which he was to pay, should be of stone or brick, and should be standing at the time he was to re-enter, or resume possession. The object, and intent of the covenant would be effectually and fully attained, if the words "by the said party of the second part, his executors, administrators, and assigns," were entirely disregarded.

They may, without prejudice to the defendant, be treated as surplusage, and the omission of them would not alter or affect the meaning of the agreement in its practical operation. Indeed, the provision for the renewal of the buildings which was to be substituted in the new lease, for that of paying the value thereof, or for a further renewal, is in harmony with that construction or view of the covenant. It speaks "of any buildings erected, and standing on the premises," constructed of stone or brick, and no reference is made to the party erecting them. The practical matters or essential requisition was, that the buildings erected, and for which compensation was to be made, should be standing at the end of the term, and that they should be built of stone or brick.

Taking the whole tenor of the second lease, and the circumstances under which it was executed into consideration, we can appropriately say, in the words substantially of SAVAGE, Ch. J., in *Van Rensselaer's heirs* agt. *Penniman,* (6 *Wend. p.*, 582,) in construing a covenant very similar to the present—that "to give a rational meaning to the words used in the contract, requires us to say that they include all such improvements," (stone and brick buildings,) "as are actually upon the premises" at the expiration of the second term.

The amount of rent to be paid on a renewal, and the value of the buildings were ascertained in conformity to the requirements of the lease, and pursuant to its terms; "the defendant duly made his election not to grant a new lease of said premises to the plaintiff, and duly notified the plaintiff of such election." He thereby, if my construction of the covenant is correct, became liable to pay the appraised value of the buildings, and the plaintiff is entitled to that with interest.

The order appealed from, should be affirmed with costs, and under the stipulation, judgment should be given for such value of the buildings with costs.

MASON, J., *delivered the following dissenting opinion:*

A careful examination of this case has led me to the conclusion that upon these two leases, taken together, and the facts found by the judge before whom this case was tried, the defendant cannot be required, either at law or in equity, to issue this third lease. Neither is the defendant liable, it seems to me, upon the clearest principles of our law, to pay the plaintiff for the buildings erected by Howard under the first lease. These brick buildings were of a permanent character and when fixed to the realty became a part of it, and they were not such buildings as a tenant, without some agreement with the landlord, would have the right to remove. The parties, however, have fixed and determined their rights under the first lease by express covenant.

The landlord has covenanted that at the expiration of the lease he will renew the lease for a second term of twenty-one years, or pay for such stone and brick buildings as may have been erected by the tenant upon the demised premises and shall be then standing thereon.

He did not agree to do both, He reserved his election to pay the appraised value of the buildings, or to issue a new lease for a second term of twenty-one years. It is

beyond a doubt that when the defendant had issued to the plaintiff this second lease he had fulfilled this covenant to the letter, and was under no obligation to pay for these buildings. He had his election either to grant a new lease for a second term of twenty-one years, or to pay for the buildings, and when he elected to issue the lease, and did so, no liability remained to pay for the buildings. It only remains to consider whether such liability is imposed upon him thus by any thing contained in the second lease issued by the defendant to the plaintiff.

There is nothing in the second in any way referring to the buildings erected by Howard under the first lease, and the covenant in the second lease to issue a new lease for twenty-one years longer at the expiration of that lease, or to pay the value of all such stone and brick buildings as may have been erected by the party of the second part as on the demised premises and as shall be then standing thereon, does not include the buildings erected by Howard under the first lease.

This is apparent from the plain language of the lease, and the plaintiff must so have understood it when he instituted this suit to reform it, and have a clause inserted that would render the defendant liable to pay for these buildings; but he failed to establish his claim to have this lease reformed and the court properly refused this branch of the relief. The defendant's covenant in the second lease cannot upon any construction, be held to extend to the buildings erected by Howard under the first lease.

The length and breadth of his covenant in the second lease was either to issue a new lease for twenty-one years or pay the plaintiff the appraised value of any stone or brick buildings which the plaintiff might erect on the demised premises during the term of the said lease.

The defendant has his election whether to renew that lease for a third term of twenty-one years, or to pay the plaintiff the value of the buildings which should have been

erected by him, and be standing upon the demised premises at the expiration of the term. The defendant did elect, and served a written notice upon the plaintiff that he had concluded not to renew the said lease, but to pay the value of any stone or brick buildings which had been erected by the plaintiff during the term of the said lease.

The general term were, therefore, in error in requiring the defendant to issue a new lease for twenty-one years, but were right in reversing the judgment of the special term and granting a new trial.

It is true, as claimed by the defendant's counsel, that the law imposes no obligation on a landlord to pay the tenant for buildings erected on the demised premises in the absence of an agreement to do so. (*Kutter* agt. *Smith*, 2 *Wallace U. S. R.*, 491.) The defendant did not agree to pay the plaintiff for these buildings erected by Howard, but did covenant to pay for those erected by the plaintiff himself and which should remain on the premises at the end of the term, and I think this covenant is broad enough to include the enlargement of these brick buildings put upon the demised premises by the plaintiff.

The finding of the referee is not inconsistent with this claim. It is true, we find that no stone or brick buildings have been, at any time, erected upon the said premises by the plaintiff.

This is in strict accordance with the plaintiff's evidence, for he swears the same buildings were on the premises when he purchased that are now, only that he had enlarged them.

The defendant would not be liable for ordinary repairs upon the buildings erected by Howard, but I think the enlargement of these buildings should be regarded as erections within the meaning of the defendant's covenant by which he agreed to pay for the buildings erected by the plaintiff if he did not renew the lease. I infer from the testimony of the plaintiff that he made these erections under

the second lease, and the defendant's covenant embraces them.

That covenant is to pay for all such stone or brick buildings as may have been erected by the party of the second part, &c., and be then standing thereon—such as shall have been erected at any time by the plaintiff and be standing upon the demised premises at the end of the term.

It follows that the special term were in error in dismissing the plaintiff's complaint, and the general term were right in reversing that judgment, and the judgment order must be affirmed and judgment absolute be rendered for the plaintiff that he recover the value of the erections of the plaintiff in the enlargement of these buildings with the costs of suit.